IRA D. THOMPSON, Respondent, *v.* CYRUS ROWE,
Treasurer of Sacramento County, Appellant.

The Court of Sessions are vested with the power of taxation and appropriation,
for County purposes.

Under the Act of 1851, the Court of Sessions were authorized to appropriate
one half of the current revenue to the current expenses, to the exclusion of
prior indebtedness.

Under the act of 1851, the County treasurer, pursuant to the order of the Court
of Sessions, was bound to apply one half of the revenue of that year to exist-
ing indebtedness, and the other half to subsequent indebtedness.

APPEAL from the District Court of the Sixth Judicial District,
for Sacramento County.

On the 22d of December, 1851, Rowe filed his petition, stating
that he was owner of warrant No. 177, drawn by the auditor of
Sacramento County on the county treasurer, for $1192.70, for
work on prison ship, in favour of one Gale, or order, and by
him indorsed; dated August 1st, 1850, and noted by the trea-
surer on the same day, "not paid, for want of funds;" that the
warrant was duly registered, &c.; that on the day of filing the
petition, the plaintiff presented the warrant to Rowe, then trea-
surer, and demanded payment, with interest, which Rowe re-
fused, &c.; that Rowe, at the time of such demand, had in his
hands, as treasurer, $10,000; a sum sufficient to redeem this,
and all other warrants registered prior thereto; and praying for
a *mandamus*, requiring Rowe to pay, &c., or show cause. The
petition was sworn to; and the Court granted an order, requiring
Rowe to appear and show cause why he should not pay the war-
rant. The defendant answered under oath, admitting the de-
mand and refusal to pay, and that he had sufficient funds to pay
the warrant in question, and all other warrants registered prior
thereto; but setting out an order made by the Court of Sessions,
November 8th, 1851, pursuant to the 69th section of the act of
March 11th, 1851, concerning courts of justice, &c.; by which
order the treasurer was required to pay, on the indebtedness of
the county, accrued since May 1st, 1851, one half of all county
revenue, collected or to be collected, since said 1st of May, and

the whole amount of money in the treasury on that day, in the manner prescribed by law; and setting apart the other half of such revenue for the payment of the indebtedness for the current year, commencing on said 1st of May, as follows: orders drawn between the 1st of May and the 8th of November, for services, the compensation of which was fixed by law, to be paid in full; and where the compensation was not fixed by law, one half the amount to be paid, provided the holders would receive it in full satisfaction;—all orders drawn after the 8th of November, to be paid in full; and further, reciting that the whole revenue collected between the 1st of May and 8th of November, having been applied to prior indebtedness, and requiring the treasurer to apply to the payment of the indebtedness accrued between those dates, and subsequently accruing, enough of the first moneys paid into the treasury to effectuate the foregoing provisions. The defendant then averred the presentation and demand of a large amount of warrants issued since the 1st of May; and his willingness to pay all moneys in his hands, as soon as he could have the judgment of the Court as to the class of warrants he ought to pay. A demurrer to this answer was sustained; and the defendant filed an amendment, stating that the whole revenue paid into the treasury between the 1st of May and 16th of December, 1851, was $36,437.35; that before the last-mentioned day, the predecessor of the defendant paid the whole of that sum on county indebtedness, existing prior to said act of March 11th, 1851; that since the defendant came into office, (December 16th, 1851,) he had received, of the revenue for the current year, $12,375, besides which, there was no money in the treasury; and insisting that none of the moneys received by the defendant were applicable to the plaintiff's warrant, by reason of said order of the Court of Sessions.

The cause was tried by the Court, and the facts were admitted to be as stated by the pleadings. The Court ordered a peremptory *mandamus* for the payment of the warrant, with interest; and gave judgment against the defendant for costs. The defendant appealed.

  *Tod Robinson,* and *P. L. Edwards,* for the appellant. 1st. Prior to the act of March 11th, 1851, the Court of Sessions had

power to control and dispose of the whole county revenue; and the same power is continued by that act, as to one half of such revenue. Stats. 1850, p. 210; stats. 1851, p. 19. 2nd. The act of 1850, concerning the office of county treasurer, fortifies our position. It shows the treasurer to be subject to the Court of Sessions. Stats. 1850, p. 115. 3d. But the act of 1851 is a legislative construction of the former statutes, and something more. 1 U. S. Dig. 451; 2 Ib. 336; 3 Ib. 405; U. States *v.* Freeman, 3 How. 556. 4th. The act authorizing the Court of Sessions of Sacramento County to borrow money, does not affect this case. Stats. 1851, p. 447. 5th. Public policy, and the rule that statutes *in pari materia* are to be construed together, are in support of our position. 6th. The right asserted for the respondent would destroy the county, and is repugnant to the constitution and laws, authorizing its creation for the preservation of public order, and the promotion of public good; and therefore ought not to be favoured. The control of the revenue is confided to the Court of Sessions, for public purposes; and cannot be diverted by creditors. 1 Louis. Ann. Rep. 435.

*J. H. McKune,* for the respondent. 1st: The treasurer is an officer having no connection with the Court of Sessions; and his duties are prescribed by law. The Court of Sessions can only compel him to settle his accounts once a year. 2nd. The powers of the Court of Sessions are given by the statute organizing that Court; and it can take no powers by implication. 3d. The 69th section of the act of March 11th, 1851, only gives the Court of Sessions power to fix the rate of taxation. The money collected must be paid by the collector and treasurer, as the law directs. See stats. 1851, p. 448. 4th. The order of the Court of Sessions is void, for the reasons aforesaid; and because it is an attempt at judicial legislation, not warranted by the statute on which it professes to be founded; and if it were, the act would be unconstitutional, as divesting vested rights, &c.; and also, because no such object is indicated by the title of the act.

Justice HEYDENFELDT delivered the opinion of the Court. The act concerning courts of justice and judicial officers, passed March 11th, 1851, confers general powers of taxation and appropriation upon the Court of Sessions, for County purposes.

But in relation to the taxes of the present (current) year, it specially directs, that one half shall be set aside and applied to the payment of any county indebtedness then existing.

This provision is a rule for the government of the county treasurer: and after the application of one half of the revenue for the year, in the payment of indebtedness existing at the time of the passage of the act, the other half, by clear construction, must be devoted to the current expenses of the county, and can only be properly paid to audited claims against the county, created after the passage of the act.

Let the judgment be reversed.

*S. C. Hastings,* for the respondent, petitioned for a rehearing; contending that it was not competent for the legislature, or the Court of Sessions, by their direction, to divert the ordinary revenue from the payment of all debts contracted on the implied undertaking of the county, to subject such revenue to their payment.

Friday, Feb. 13th.   Petition overruled.

*Hastings* again renewed his application; which was again overruled, Thursday, February 19th.