McDONALD *v.* MADDUX, TREASURER OF SACRAMENTO COUNTY.

The Act of 1854, to fund the Floating Debt of the City and County of Sacramento, forbidding the redemption of any warrants accruing prior to a certain date, is obligatory upon County officers. The Legislature is the paramount political power, and can control and direct them in this respect.

The Board of Supervisors, therefore, has no power to direct and authorize the Treasurer to pay warrants in violation of the provisions of the statute.

APPEAL from the District Court of the Sixth Judicial District, County of Sacramento.

A statement of facts appears in the opinion of the Court.

*W. S. Long* for Appellant.

I. The plaintiff is not affected by the Funding Act of 1854; as section 8 of that Act clearly exempts him from its operation so far as the present case is concerned.

II. Neither is he affected by section 120 of the General Revenue Law of 1854, for the following reasons :

1st. That section has reference exclusively to revenue collected for that purpose.

2d. By the Act of 1855, creating Boards of Supervisors, and conferring upon them general supervision and control over the affairs of the county, they are made the fiscal agents of the county. If you take from them *all discretionary power*, as to the appropriation of its moneys, you necessarily weaken the energies of the Board, and defeat many of the purposes for which it was created.

3d. The Supreme Court has recognized in the case of Laforge *v.* McGee, 6 Cal. 285, the power that is here contended for, as residing in the Board of Supervisors.

If any additional authority were required to establish the proposition that the Board of Supervisors possessed the power exercised by it in passing the Order of March 16th, the following may be given :

In the case of Thompson *v.* Rowe, 2 Cal. 68, the Supreme Court says : " The Act concerning Courts of Justice and Judicial Officers,

passed May 11th, 1851, confers general powers of taxation and *appropriation upon the Court of Sessions for county purposes.*"

Section 25 of the Act of March 20th, 1855, creating Boards of Supervisors, is in the following language :

" The Board of Supervisors shall have and exercise in its county all jurisdiction *and powers, other* than *criminal, conferred by any law on the Court of Sessions, or heretofore exercised by said Court under any statute, or by any statute provided to be exercised by said Court, when the same* do not conflict with the provisions of this Act." See Laws of 1855, p. 56, sec. 25.

This section clearly gives to the Board of Supervisors the same power to appropriate the county revenue which the Court of Sessions possessed under the Act of March 11th, 1851.

*Upton & Hereford* for Respondent.

Appellant's counsel cites Laforge *v.* McGee, 6 Cal. 285, and Thompson *v.* Rowe, 2 Cal. 68. In the former case, the principal point decided is with respondent, viz., that the Legislature having appropriated the fund, the discretion of the Supervisors was at an end. The latter had reference to powers of the Court of Sessions, supposed to be conferred by the Act of May 11th, 1851, to appropriate the County revenue. That power was repealed prior to the passage of the Act of 1855, creating Boards of Supervisors.

BALDWIN, J., delivered the opinion of the Court—FIELD, J., concurring.

Proceeding for a *mandamus* to compel the County Treasurer of Sacramento to pay certain moneys.

The only facts necessary to be stated in order to show the application of the principle decided are these : In 1853, certain warrants were issued on the Treasurer of the County of Sacramento, of which the plaintiff is the holder. These warrants were presented in August, 1853, to one Rowe, then Treasurer of that county, and payment refused for want of funds, and the warrants registered according to law.

The complaint shows that there was received into the Treasury of the county, in 1853, a large sum of money, of the revenue of that year,

McDonald *v.* Maddux.

properly applicable to the payment of these warrants, and a sufficient sum to have paid the same in the order of the registry; but the then Treasurer refused to pay the same; and that said Treasurer, after going out of office, paid to his successor, in lieu of money which he had not accounted for, on a settlement of his official business, some $3,426 in Sacramento County bonds of the funded bonds of that county, thereby transferring that sum from the General Fund of 1853 to the Sinking Fund of 1854; the effect of which was to destroy or divert the fund out of which the plaintiff was entitled to payment.

The complaint further states, that on the sixteenth of March, 1857, there was in the Treasury several thousand dollars belonging to the Sinking Fund, for the redemption of the funded bonds for the year 1853, and more than the amount necessary to redeem and pay off all the funded bonds of that year, which surplus was not appropriated by law to any other purpose; and for the purpose of supplying the deficiency in the General Fund of the year 1853, created by receiving from Cyrus Rowe the aforementioned bonds instead of money due the General Fund of 1853, the Board of Supervisors made an order on the sixteenth of March, 1857, that the Treasurer redeem out of said fund any outstanding warrants upon the General Fund of 1853, according to the date of the registry thereof.

If this order could be maintained, the plaintiff might, with much plausibility, insist upon his claim to the remedy he seeks.

But by the Act of 1854, entitled "An act to Fund the Floating Debt of Sacramento County, and to provide for the payment of the same," an obstacle which we consider insuperable is interposed. By the 8th section of that Act (Laws of 1854, p. 201) it is provided: "From and after the first day of May, one thousand eight hundred and fifty-four, it shall not be lawful for the County Treasurer of said county to redeem any warrants drawn for indebtedness accruing prior to the said first of May, excepting with the funds he may then have on hand, or which may be by him received after that date, properly belonging to the revenue of the county previous to said term."

Conceding the power of the Supervisors to dispose of the money of the county, not otherwise appropriated, to the payment of debts, in such order and in favor of such creditors as they may choose, it seems

clear that the Legislature, as the paramount political authority, may direct and control them in this respect.

By this section the Treasurer is expressly inhibited from paying warrants issued on indebtedness accruing prior to the first May, 1854, except with funds then in hand, or subsequently received and belonging to the revenue of the county previously to 1854. This fund was collected in 1856, and belonged to the revenue of the county of that year. At any rate, there is no pretense that it belonged to the revenue of the county previously to the first of May, 1854.

We cannot see that the Supervisors had any right to order the Treasurer to do what the law expressly inhibited him from doing. Nor can there be any serious question of the power of the Legislature to direct in what manner the debts of the county shall be paid or its funds disbursed, subject to certain well known restrictions, which do not apply to this case.

The claim of the appellant seems to be a just one, and we could wish that the remedy he seeks were reconcilable with the law. But as it is, we must affirm the judgment below denying the *mandamus.*