## MOSES W. FARWELL vs. CITY OF ROCKLAND.

*Assumpsit. Contract. Salary of a municipal judge may be diminished.*

There is no contract, express or implied, between a public judicial officer and the government whose agent he is.

A public officer has no proprietary interest in his office, nor property in the future compensation attached to it.

The authority which establishes the compensation may increase or diminish it, unless there be constitutional prohibition to the contrary.

When the salary of a public officer is diminished during his official term, such diminution is prospective only.

When there is a legal duty enjoined by competent authority upon a municipal corporation, assumpsit may be maintained to enforce its performance.

ON FACTS AGREED.

ASSUMPSIT to recover a balance alleged to be due Mr. Farwell upon his salary as judge of the police court of Rockland, for the term of four years from March 7, 1866. This power to fix the annual salary of this office was given by the act creating the court (Special Laws of 1861, c. 78, § 13) to the mayor and board of aldermen of Rockland, who on the twenty-fifth day of July, 1865, established it at $500 per annum, instead of its previous rate of $300. The plaintiff was elected March 5, 1866, qualified the seventh day of that month, and served his full constitutional term. May 22, 1866, an order passed the board of aldermen to reduce the salary to its former rate of $300 a year. At the end of each and every quarter during his term the plaintiff demanded his compensation at the rate of $500 per annum, but was paid only at the rate of $300, being $75 per quarter instead of $125, which he declined to receive in full, but took it upon account and under protest.

This suit was brought to recover the two hundred dollars claimed to be in arrears, with interest from the time each quarterly instalment became payable.

Farwell *v.* Rockland.

*Gould & Moore,* for the plaintiff.

The agreed statement sets forth that the salary of the judge of the police court was fixed at five hundred dollars a year; and, being so established, an order passed the board of aldermen to reduce it to three hundred dollars; but it does not appear that this order ever received the approval of the mayor, which was essential to give it any force whatever. ·

The salary, when fixed, is fixed for the term of the judge. He accepts the office with the established compensation, and it cannot be diminished without his consent. He is to be paid by the city; and the vote fixing the salary at the time of his entering upon the duties of the position, creates a contract between him and the city. *Chase v. Lowell,* 7 Gray, 33.

The mayor and aldermen determined the amount to be paid by their action of July 25, 1865, and thus exhausted their powers under the act creating the court, so that the action of the aldermen of May 22, 1866, was unauthorized and void. ·

They were to fix "the annual salary" of the judge; therefore they could not diminish it during the year then commenced. At any rate it will hardly be contended that they could give the attempted retroactive effect to their order, so as to reduce the compensation of the plaintiff for the two and a half months he had served before the order was passed.

*D. N. Mortland,* for the defendants.

There is no contract between the parties to this suit to sustain an assumpsit. 1 Bouv. Law Dict., 135, 305; 2 Black. Com., 442; *Jewett v. Somerset,* 1 Maine, 125; *Simpson v. Bowden,* 33 Maine, 549; *Chandler v. State,* 5 Harris & J., 284; *State v. Chase, Id.,* 297; *Hatten v. Witherold,* 5 Harrington, 38.

Mr. Farwell could not have been liable to the city for any neglect to perform his duties as police judge. *M'Millan v. Eastman,* 4 Mass., 378; *Bailey v. Butterfield,* 14 Maine, 112; *Charleston v. Stacy,* 10 Verm., 562.

The mayor and aldermen had the right to fix the salary annu-

ally; and May 22, 1866, they did fix it for the current political year, commencing in March previous. There being no constitutional prohibition, the plaintiff's salary could be reduced by the power establishing it, since "the salary and tenure of an office do not constitute a contract." 3 Pars. on Con., 529, 530; *West River Co. v. Dix*, 6 Howard, 548; *Butler v. Pennsylvania*, 10 Howard, 402; *Warner v. The People*, 2 Denio, 272; *Conner v. New York*, 2 Sandf., 355, and 1 Selden, 285; *Knoop v. Piqua Bank*, 1 Ohio St. R., 616; *Toledo Bank v. Bond, Id.*, 656; *Commonwealth v. Bacon*, 6 Serg. & R., 322.

APPLETON, C. J. The act of 1861, c. 78, establishing "a police court in the city of Rockland," approved March 14, 1861, provides in the thirteenth section, that "the judge of said court shall receive from said city, in quarter yearly payments, at the close of each quarter, an annual salary of such amount as the mayor and aldermen shall determine, which shall be in full for all fees pertaining to said office."

On the twenty-fifth day of July, 1865, the following vote or order was passed:

"In board of aldermen, July 25, 1865. Alderman Wise presented the following order which was passed; ORDERED, that the salary of the police judge of the city of Rockland, be and hereby is established at five hundred dollars a year instead of three hundred as heretofore."

On the fifth day of March, 1866, the plaintiff was duly elected judge of the police court for the city of Rockland, for the term of four years next following, and was duly qualified, entered upon and continued in the discharge of his official duties during the term for which he was elected.

Shortly after the plaintiff entered upon his official duties, the following vote was passed; viz:

"In board of aldermen, May 22, 1866, the following order was presented by alderman Hall, and was read and passed: ORDERED, that the salary of the judge of the police court be, and hereby is

Farwell v. Rockland.

established at three hundred dollars per annum from the first Monday in March, 1866."

The plaintiff having served during the term for which he was elected, claims compensation at the rate of five hundred dollars per annum. He has taken under protest the annual salary of three hundred dollars. The question presented for determination is, whether he is entitled, during the whole or any part of his official term, to the salary as established when he accepted the office to which he had been chosen, and entered upon the discharge of its duties.

Public offices established by the legislature are mere agencies for the benefit of the people, not contracts on their part with the office-holder for his benefit. They may be accepted or refused. If accepted, they may be resigned at any moment, and no action is maintainable for such resignation. As offices are created for the public good, the cause for their creation may, in process of time, become a sufficient one for their abolition. The term of official existence may be made longer or shorter, or the office itself may be abolished, as the public necessities may demand. As an office may be abolished, so its emoluments may be increased or diminished, except in the special cases where it is forbidden so to be done by the constitution. In this State it is so forbidden, in reference to the justices of the Supreme Judicial Court, who by its provisions are "to receive a stated compensation, which shall not be diminished during their continuance in office." Except in this special case, the necessary inference is that the legislature have absolute power over the compensation of public officers.

These views have repeatedly received the sanction of judicial tribunals, whose opinions are entitled to the highest consideration. In *Taft v. Adams*, 3 Gray, 126, it was decided that the legislature had the power to shorten the term of any officer, the tenure of whose office is not fixed by the constitution. In *Commonwealth v. Bacon*, 6 S. & R., 322, the salary of the mayor was reduced by the city government of Philadelphia, after his acceptance of the office. It was claimed that the reduction was unconstitutional,

upon the ground that there was a contract between the city and its mayor after his acceptance, which could not be changed or modified, but the court thought otherwise. "These services," observed Duncan, J., "rendered by public officers, do not in this particular partake of the nature of contracts, nor have they the remotest affinity thereto. As to a stipulated allowance, that allowance, whether annual, *per diem*, or particular fees for particular services, depends on the will of the law-makers; and this whether it be the legislature of the State or a municipal body empowered to make laws for the government of a corporation." In the case of *Commonwealth v. Mann*, 5 W. & S., 418, the court say "that if the salaries of judges, and their title to office could be put on the ground of a contract, then a most grievous wrong has been done them by the people, by the reduction of a tenure during good behavior to a tenure for a term of years."

In *Barker v. Pittsburg*, 4 Burr, 51, the court says, "that there is no contract, express or implied, for the permanence of a salary, is shown by the constitutional provision for the permanence of the salaries of the governor and judges as exceptions." In *Conner v. the City of New York*, 2 Sandf., 370, Sandford, J., uses the following language: "We think it must be assumed that there is no contract, express or implied, between a public officer and the government whose agent he is. The latter enters into no agreement, that he shall receive any particular compensation for the time he shall hold office; nor in the case of a statutory office, that the office itself shall continue any definite period." These views were fully sustained by the Court of Appeals in a very able opinion in the same case, by Ruggles, C. J., in 1 Selden, 291. In *Augusta v. Sweeny*, 44 Geo., 463, McCay, J., says: "If the office be created by legislative enactment, the legislature may abolish it; and if it be created by municipal authority, that same authority may abolish it." In *Butler v. Pennsylvania*, 10 How. (U. S.,) 403, the court held that the tenure and salaries of all public officers, except when otherwise provided by the constitution, are dependent upon legislative discretion. Indeed, the act creating

Farwell v. Rockland.

the court, of which the plaintiff was elected judge, is an illustration of the principles heretofore advanced, for the court came into existence by the abolition of a preceding one, with substantially the same powers, but with a changed name.

The right to fix the salary of a police judge, which is given by statute to the defendants, involves the right to change, by increasing or diminishing it. The vote of July 25, 1865, was an alteration of a previously existing rate of compensation during the official existence of the plaintiff's predecessor.

If, as is argued, the vote of May 22, 1866, is invalid because it does not distinctly appear that the mayor was present, the vote of July 25, 1865, must be regarded as of no effect for the same reason, for the fact of his presence is no more apparent in the last vote than in the first. If both are void for this cause, then there is no salary shown to have been established, and the plaintiff must entirely fail; for while the report states the salary was established at a certain sum, it further sets forth the vote by which it was so established, and if that was void, then there was no salary established.

But when the vote of May 22, 1866, was passed, fixing the salary of the police judge thereafter, the plaintiff had been performing judicial services from the day he was qualified up to that time at a stipulated rate of compensation. For those services at that rate, he could not be deprived of compensation. The vote prospectively is binding. Retrospectively it is void. If the plaintiff was not satisfied with the salary then established, he might have resigned.

It is urged that assumpsit is not maintainable. But it was the duty of the defendant corporation to pay the plaintiff the salary which they had voted to pay as long as that vote remained in full force. It may be that the plaintiff might successfully have resorted to mandamus. But however that may be, we have no doubt he can maintain assumpsit. The same question arose in *The People v. Mayor, &c., of New York*, 23 Wend., 685, in which Nelson, C. J., says: "Here is a legal duty enjoined by competent author-

ity, which the corporation is bound to discharge. It is as bind-
ing upon them as if entered into under their corporate seal. Full
consideration has been rendered in the services of the officer for
the liability thus imposed. An action on the case or assumpsit
will lie for a neglect of corporate duty."

. The plaintiff is entitled to receive compensation at the rate of
$500 per annum, from March 7, 1866, up to May 22, 1866, de-
ducting therefrom whatever has been received, with interest upon
the sum thus ascertained from the expiration of his first quarter to
the date of judgment.                          *Defendants defaulted.*

DICKERSON, BARROWS, VIRGIN and PETERS, JJ., concurred.