Reed, J.
The defense that the county was indebted in excess of the constitutional limitation, and hence, that the warrants in question were void, cannot, in our judgment, *371 prevail. The warrants on which suit was brought were drawn upon and payable out of a specific fund, viz.: that created for “ Road Purposes.” In section 5 of the “ Revenue Act,” Geni. Statutes, sec. 2816, it is provided, “ There shall be levied and assessed upon taxable real and personal property within this state in each year, the following taxes * * * for the support of schools, not less than two, nor more than five mills on the dollar; for road purposes not more than five mills on the dollar,” etc. This was re-enacted with some amendments, not necessary to be noticed, (the power to levy and the amount remaining the same) by the legislature of 1885. See Sess. Laws 1885, § 3, p. 318. Second in importance, only, to education, under our common schools system, is the subject of roads and bridges, the welfare and prosperity of a county or community being dependent upon facilities for travel and communication; and it assumes far greater importance in a mountain region where greater obstacles are to be overcome, and where travel is almost impossible except by artificial routes, needing annually great labor, care and attention. Realizing this fact, the legislature wisely provided for a specific fund annually for such purposes, which fund is as specific and sacred for the purposes of its creation as the common school fund, and can no more be diverted and otherwise appropriated by county authorities. It is true, that it is declared in the constitution, art. 9, sec. 2, “ The general assembly shall, as soon as practicable, provide for the establishment and maintenance of a thorough and uniform system of free public schools throughout the state,” etc., and in sec. 3, that “ The public school fund of the state shall forever remain inviolate and intact * * *. No part of this fund, principal or interest, shall ever be transferred to any other fund or used or appropriated, except as herein provided,” etc. While there are no such provisions in regard to a special fund for road purposes in the constitution, there is no prohibition. The state constitution is a limitation only of power of the legislature. It is a fundamental *372 principle that the state legislature has unlimited power, except as restricted by the constitution.
The supreme court of this state, in People ex rel. Seeley v. Hall, 8 Colo. 497, said : “ Except as limited or controlled by constitutional provisions, the general assembly is omnipotent in relation to municipal corporations within the state. It calls them into being and endows them with whatever powers and privileges they possess. If in its judgment advisable, their existence, even, may at any time be absolutely terminated. In,these and other particulars it bows only to the superior behests of the people expressed in their organic law.” And in Sangamon Co. v. Springfield, 63 Ill. 66, it was said, “ The taxes must be paid into the county treasury, and when there they are under the control of the county, and it must be held responsible for any proportion due to the city, or to any third party. The treasurer is the mere agent, and must obey the authorities of the county. The direction in the act, that when ‘the taxes shall be paid into the county treasury, the treasurer shall pay,’ etc., imposes an obligation upon the county, on the refusal of the treasurer to comply with the requirement. He is commanded to perform a purely ministerial duty. The liability of the county arises from the fact of having the possession of money which rightfully belongs to another party.
“ A county is a public corporation, which exists only for public purposes, connected with the administration of the state government, and may be controlled by the legislature. 2 Kent’s Com. 306. Such a corporation, and of course its revenue, is subject to the control of the legislature. County of Richmond v. County of Lawrence, 12 Ill. 1.
“ When, therefore, the legislature directs the application of the revenue on deposit in the treasury to a particular purpose, or its payment to any party, a duty is imposed and an obligation created upon the county.” See also, Alexander v. People, 7 Colo. 155; People v. Osborne, 7 Colo. 605; Ketchum v. City of Buffalo, 14 N. Y. 367; People v. Flagg, 46 N. Y. 401.
*373 That the legislature is exercising an acknowledged constitutional power in directing future county revenues to specific purposes, see People v. Flagg, (supra); Young v. Hall, 9 Nev. 213; Esser v. Spaulding, 17 Mo. 303; People v. Power, 25 Ill. 191; McDonald v. Maddux, 11 Cal. 187; McCauley v. Brooks, 16 Cal. 35.
The legislature, within the legitimate limits of its power, wisely provided for a specific fund to be assessed, levied, collected and applied to road purposes only, and such fund is as specific for that purpose, and as unavailable for other purposes, as the school fund is made by the constitution. It was against this specific fund that the warrants in controversy were drawn.
By the stipulation on file it is shown that the amount of the credits to the road fund in the years 1883 to 1886, both inclusive, exceeded in the aggregate the outstanding warrants and warrants drawn against it, some $19,000, and that in each of the years the available road fund exceeded by quite an amount the warrants drawn. Hence, if the fund had been entirely devoted to the purposes of its creation, and there had been no diversion or misapplication of the fund, it was at all times solvent, and at the end of each fiscal year with money in the treasury to pay all warrants drawn during the year. It is agreed that on Dec. 31,1883, there were outstanding warrants amounting to $16,926.32. What amount of it had been drawn in the year 1883, and what amount existed prior to that time, we are not shown; but the assets of the fund exceeded all the outstanding warrants over $3,000. At the close of each of the following years the balance to the credit of the fund was much greater. It will be observed by the figures’ shown in the stipulation that the delinquent tax uncollected on December 31, 1883, was $12,966.39, and that in the following years it remained about $16,000 or over, showing that the collections of former years about equaled the delinquency of each succeeding year, consequently, the fund was at all times solvent and able to respond to the warrants drawn.
*374 It was not contemplated by the legislature, nor expected that there should be at all times money belonging to' the fund actually in the treasury to pay all warrants at the time of drawing or presentation, so a system of registry was provided, whereby warrants were to be paid in the order of ■ their presentation.
In Seeley v. May, 9 Colo. 404, it is said by the supreme court: “Valid appropriations of its revenue may be made in anticipation of the collection thereof,” etc.
The drawing of warrants against a special fund, already provided, and certain to be paid during the fiscal year for their payment, is not the creation of a debt or debts within the constitutional prohibition. The application of a special fund to the purpose of its creation, by the drawing of warrants against such fund, unless the amount drawn during the year exceeds the amount provided for such fund, and supposed to be available, is not the creation of a debt, although it anticipates the revenue to be collected, as they are drawn against existing values,—hence, cannot be classed and regarded as the debt of the county prohibited by the constitution, unless in excess, in some year, of the money provided for their payment during that year. Whether or not warrants so drawn on the special fund, in excess of it, can be classed with the general indebtedness of a county, so as to swell the aggregate and render the warrants void under the constitutional prohibition, we do not find it necessary to determine in this case, but if they could in any case be so considered it would not invalidate all the warrants of that ■year, but only those drawn after the fund was exhausted, and in excess of it. As it is shown, by the stipulation on file, that in the years from 1883 to 1886 the warrants drawn did not exceed, but were clearly within the fund provided for their payment, none of them could become invalid by reason of the general indebtedness exceeding the limit fixed by the constitution.
II. It is urged in argument, by counsel of defendant in error, that this form of action would not lie. He says, *375 “ Another objection to plaintiff’s recovery in this action is, that the warrants are payable out of a particular fund and are not a charge against the county in this action,” and a long list of authorities are cited in support of the proposition. The first, and perhaps the only answer necessary to this position, is, that no such question was raised in the court below; it first appears in argument. That the form of action selécted was the proper one appears to have been conceded. An answer was put in upon the merits, putting the defense entirely upon other and different grounds, the issues were made up, and the case tried without a question as to the form of action selected.
This is a court of review, not of original jurisdiction. Had the point been raised by proper pleading in the lower court, and the question adjudicated, the finding might be reviewed here; but having been waived, and the propriety of the action conceded, the matter is not before this court. It is now too late to take advantage of matter in abatement of the action. But admitting, for the purposes of argument, that the question can be raised in this court, we are confronted with the following facts and difficulties. Conceding, as we must under the authorities, that where warrants are. drawn upon a special fund and there is money belonging to that fund in the hands of the proper officer, who refuses to pay, mandamus is the proper proceeding, and proof must be made of the ability of the officer to pay, what are the conditions of this case ? It is alleged in the complaint that for the years 1883 to 1887 the amount of the road fund was largely in excess of the warrants drawn against it, and that at the beginning of the year 1887 there was, or properly should have been, a large balance belonging to that fund in the hands of the treasurer. These several allegations are all traversed by the answer, are re-asserted in the replication, and the further allegation made, asserting in effect, that a large balance should be in the road fund, and if not there, that the same had been, by the county authorities, diverted and misapplied to other county purposes.
*376 In the stipulation of counsel it is conceded that the warrants in controversy were presented to the treasurer and payment demanded, “ and that payment thereof was refused for want of funds.” Here is a conclusive and binding agreement entered of record, that there was no money in the road fund for the payment of the warrants. Counsel for plaintiff,.knowing this fact in advance, could not be ’ required or expected to proceed by mandamus, which could only be available with the .money in the treasury, and upon proof that it was there, and of a refusal to pay. By the figures and abstracts contained in the stipulation it is shown that there should have been a large balance in the treasuiy to the credit of the road fund. No proof whatever was offered on the part of the defense to explain or show to what use the fund had been applied, and why it was not on hand. Prima fade a case was made sustaining the allegations in the complaint that required defendants to rebut. No effort was made to do so. Counsel evidently relied upon the supposed invalidity of the warrants by reason of the county indebtedness exceeding the constitutional limit, and did not think it necessary to interpose other defenses. The figures contained in the stipulation, showing that there should have been a large balance of the special fund in the treasury, and the same document stipulating that there was none, prima fade, at least, established the allegations of the complaint of diversion and misapplication of the. fund to other purposes by the county officials; while the abstracts from the record of the .proceedings of the county commissioners, putin evidence by the plaintiff, show that the county commissioners, by resolutions passed and entered of record, ignore and repudiate the warrants, and open up new accounts and designate arbitrarily the warrants that shall be thereafter paid. All the evidence put in shows the financial affairs of the county to have been inextricably muddled; the warrants drawn upon the special fund repudiated, the money belonging to the fund misapplied, and an illegal and mal-administration of county finances. It is an old maxim “ That there is a legal remedy of some kind for
*377 each wrong.” As before stated, there being no money in the hands of the treasurer belonging to the special fund, and this fact having been conceded by the stipulation filed, a proceeding by mandamus would have been futile and abortive. And. now to hold that this, or some similar action by the creditors of the county against it, through its corporate offi-" cers, could not be maintained and a general judgment obtained, would be practically to declare that the plaintiff was remediless and that creditors of a county could in no way enforce just claims if the authorities saw fit to dissipate, divert or misapply special funds proyided to pay special warrants.
The action (aside from the equitable part of it that will be hereafter considered), was an action of indebitatus assumpsit at common law, and by the code the common law remedy has not been restricted but enlarged. This action will lie for “ The breach of all parol or simple contracts, whether verbal or written, or express or implied, for the payment of» money.” 1 Chit. Pleadg. 112; Stephen on Pleadg. 49; Curtis v. Fiedler, 2 Black. 461; United States v. Russell, 12 Wall. 623; Town of Queensbury v. Culver, 19 Wall. 83; Barker v. Corey, 15 Ohio 9.
In Archbold on Pleadings and' Evidence, 23 and 24, it is said: “ If a man undertake an office or employment, trust or duty, he thereby in contemplation of law, impliedly contracts with those who employ him, to perform that with which he is entrusted,'with integrity, diligence and skill; and if he fail so to do it is a breach, of contract, for which the party may have his remedy by action on the case or in most cases by action of assumpsit.” The general rule is, whenever a party has been damnified by the intentional wrongful act, misapplication of money, or by the gross carelessness or culpable negligence of another, an action of assumpsit may be maintained; and under the code, abolishing all special forms of action, and only giving one general action, it is clear, that where prima facie it was shown that the special fund provided for the payment of the warrants had been illegally withdrawn and appropriated to other pur *378 poses by the agents entrusted with the management of the finances, a creditor could not be expected to proceed by a special and extraordinary remedy to secure money that had no existence in a special fund. The action, as brought, was maintainable unless the allegations in the complaint and the proofs offered had been met by proper defenses and proofs, showing no misapplication of the special fund, no breach of duty or maladministration of the fund. See Stimpson v. Sprague, 6 Mo. 470; Farwell v. Rockland, 62 Me. 296.
In People v. Mayor of N. Y., 23 Wend. 685, it was said: Here is a legal duty enjoined by competent authority, which the corporation is bound to discharge * * * an action on the case or assumpsit will lie for a neglect of corporate duty. See also Ellis v. Henry, 5 J. J. Marsh. 248; Church v. Mumford, 11 John. (N. Y.) 479.
In Board of Supervisors of Sangamon County, (supra,) it was held that assumpsit under the common counts could be maintained against a county for money accruing due to the plaintiff under a statute where there was no restriction to any other particular remedy, and that when, by an act of the legislature, the county taxes were apportioned between a county and a city, and the county treasurer refused to pay the city her portion, the money due the city from the county could be recovered in assumpsit under the common counts.
In this state, as in the state of Illinois, there is no specific remedy prescribed by the legislature in proceedings of this character, hence, the remedy may be as at common law, except in so far as the common law procedure is modified by the civil code. Varnum v. Martin, 15 Pick. 440.
Under the pleadings, the stipulation, and other evidence of plaintiff uncontradicted or explained by the defendant, the court erred in its judgment. It should have been for the plaintiff.
III. By authenticated copies of the records of the proceedings of the county commissioners, put in evidence by the plaintiff, the following appears as of date of January 12, 1887, “ And whereas, there is now in the hands of the treas *379 urer quite a sum of money and evidence of indebtedness to the credit of the general and road funds, to wit: In the general fund $-and in the road fund $--, as shown by his report of January 1st, 1886,” which is followed by a resolution in regard to the disposition of the fund, etc., as is above copied in the statement of the case.
Here we find, by a resolution of the board passed and entered of record, an admission that there was in the hands of the treasurer “ quite a sum of money belonging to the road fund ” which had been in the treasury over a year. As was shown by the report of the treasurer of January 1, 1886, to this there was, presumably, to be added the amount collected from January 1, 1886, to January 12, 1887, for on that date the commissioners asserted that the hands of. the board had been tied to such an extent that they had been unable to pay any claims against the county, since the decision of the supreme court in Seeley v. May. (Dec. Term, 1885.) Payment of the warrants in controversy having been refused for an alleged want of money, the plaintiff was clearly entitled to equitable relief to the extent of the discovery and accounting asked, under the admissions entered of record and the refusal-to pay. If the facts presented upon the trial did not warrant, in the judgment of the court, a judgment in his favor, he was fully entitled to know why his claims had not been paid from money admitted to have been in the treasury,—what disposition had been made of the money belonging to the special fund conceded to have been in the treasury, and such further information, as would, if possible, enable him to enforce his just claims, and collect an unquestioned, just demand. Under our system of practice it is perhaps unnecessary to say that both legal and equitable relief may be granted in the same suit, and upon a proper prayer equitable relief may be granted upon the facts stated in the complaint at law. It is very doubtful if, under our present mode of procedure, a separate and distinct proceeding by bill in equity in aid of an action at law could be maintained. By the “supreme court judicature act” of 1873 *380 (36 & 37 Vict.), consolidating all the superior courts into one tribunal, the distinction between.legal and equitable actions was. abolished, and the mode of procedure was made similar, if not identical, with that of the code states of America,—permitting all legal and equitable causes of action and defenses to be united in one proceeding. Since the passage of that act it has been held that a purely equitable bill for discovery only could not be maintained, and the relief could only be had by the proper proceeding in the action at law; at the same time it was held “ That all the doctrines and rules concerning the subject matter of discovery * * * which had been established by courts of equity were still in force, and control the same matters in the new procedure,” and were available to plaintiff and defendant alike. See Anderson v. Bk. of Brit. Columbia, L. R. Ch., 2 Div. 644; Cashin v. Craddock, L. R., 2 Ch. Div. 140; Hoffman v. Pastell, L. R., 4 Ch. Div. 673, and the same has been frequently held in many code states.
The equitable rule in regard to discovery is “ a bill for discovery is proper either when the complainant therein has no other proof than that he expects to elicit by its means from the defendant, or when he needs the matters thus disclosed to supplement and aid other evidence which he furnishes, or whenever the court can fairly suppose that facts and circumstances discovered by means of the bill, can be in any way material to the complainant therein in lhaintaining his cause of action or defense of a suit.” 1 Pom. Eq. Juris. § 191; Montague v. Dudman, 2 Ves. 398; Finch v. Finch, Id. 492; March v. Davidson, 9 Paige (N. Y.) 580; Many v. Beekman, Id. 188; Metler v. Metler. 4 Greens Ch. (N. J.) 457; Turner v. Dickenson, 1 Stockt. Ch. (N. J.) 140; Peck v. Ashley, 12 Met. (Mass.) 478; Hoppock v. Railroad, 27 N. J. Eq. 286.
The circumstances of this case, the confusion of financial affairs and the peculiar administration shown by the public records of the proceedings of the county commissioners, certainly brought this case within the rule as above stated, and *381 entitled the plaintiff to full discovery in the premises. The court erred in refusing to grant and compel the discovery asked.
The judgment should he reversed and cause remanded.

Reversed.