THE TOWN OF KIRKWOOD, APPELLANT, *v.* DAVID NEWBURG AND OTHERS, RESPONDENTS.

*Boards of supervisors — power of, to compel towns to build a bridge — 1875, chap. 482, sec. 1, sub. 6, as amended by chapters 257 of 1876 and 451 of 1885.*

Subdivision 6 of section 1 of chapter 482 of 1875, as amended by chapter 257 of 1876 and chapter 451 of 1885, authorizes boards of supervisors, upon the application of one town, to legally enact a law requiring a stream forming the boundary between two towns to be bridged at the joint expense of said towns, and compeling each town to raise money to pay its share of the expense by an issue of bonds.

APPEAL from a judgment dismissing the complaint, entered in Broome county upon the trial of this action by the court without a jury.

*Alexander Cumming,* for the appellant.

*A. D. Wales,* for the respondents.

FOLLETT, J. :

Appeal from a judgment dismissing the complaint, with costs, entered upon the decision of a Special Term. There is no dispute

about facts, which were agreed upon as they are stated in the decision, which contains but a single conclusion of law — that the defendants are entitled to a judgment dismissing the complaint upon the merits, with costs — which was duly excepted to by the plaintiff.

Subdivision 6 of section 1 of chapter 482, Laws of 1875, as amended by chapter 257, Laws of 1876, and chapter 451, Laws of 1885, empowers boards of supervisors " to authorize any town or towns liable or to be made liable to taxation for the erection, care repair and maintenance, in whole or in part, of any bridge, \* \* \* to erect, repair and maintain the same, and to borrow such sums of money, in the manner provided in subdivision twenty-nine of this section, as may be necessary for the purposes of such erection, repair and maintenance, and to pay any debt incurred in good faith by or in behalf of such town or towns for such purpose before or after the passage of this act. But no authority shall be exercised under this subdivision, except upon the application of a town liable to be taxed for such purpose, to be made by vote of a majority of the electors thereof voting at a regular town meeting, or at a special town meeting called for the purpose, or upon the application of the supervisor, by and with the consent of the commissioner of highways, town clerk and justices of the peace of such town. If any town, at a regular town meeting held between the first day of February, eighteen hundred and seventy-five, and the passage of this act, shall have elected commissioners for the purpose of building a bridge and providing money to pay for the same by the issuing of bonds or otherwise, such bonds, not exceeding the amount authorized at such town meeting, are hereby authorized and declared valid ; but such bonds shall not be sold or otherwise disposed of for less than par. And the board of supervisors shall levy a tax on such town for the payment of such indebtedness at such times and in such amounts as may be necessary to meet the obligations incurred by said commissioners in pursuance of instructions given by such town at the time of electing said commissioners."

Subdivision 29 of this section empowers boards of supervisors to authorize any town to issue bonds and borrow money thereon for the purpose of erecting, repairing and maintaining a bridge pursuant to subdivision 6, above quoted. (2 R. S. [7th ed.], 947.)

The towns of Kirkwood and Conklin are divided by the Susquehanna river. December 24, 1884, at a special town meeting duly held in the town of Kirkwood, it was determined by a majority of the electors voting thereat not to apply to the board of supervisors of the county of Broome for authority to construct the iron bridge in question; and said town has not, by its officers or in any manner, applied to said board for authority to construct said bridge, or for authority to issue bonds to raise money wherewith to pay any part of the expense of building it.

August 25, 1885, at a special town meeting duly held in the town of Conklin, the following resolution was duly adopted by a majority of the electors voting thereat :

"*Resolved*, That the town of Conklin hereby decides and declares that application shall be made at the earliest possible moment to the board of supervisors of the county of Broome for authority to construct an iron bridge across the Susquehanna river at or near the south line of Tracy R. Morgan's farm in town of Kirkwood, between the towns of Kirkwood and Conklin, at a cost not to exceed $15,000 at the joint expense of the towns of Kirkwood and Conklin, and to borrow money and issue bonds therefor in accordance with the provisions of chapter 482 of the Laws of 1875, and the several acts amendatory thereof, as the board of supervisors may prescribe."

December 19, 1885, the board of supervisors acted upon said application, and by bill No. 35 authorized the towns of Conklin and Kirkwood to construct said bridge at their joint expense, not exceeding $15,000, and to issue bonds and borrow money thereon to defray the expense thereof. No action was taken, under this bill, by either town. Prior to March 18, 1886, there was no bridge across said river at or near the site of the bridge in question, and no highway in either town approaching the river at or very near to the site of said bridge. March 18, 1886, the board of supervisors of Broome county, by bill No. 37 (tenth finding) appointed, pursuant to chapter 314 Laws of 1838, as amended by chapter 164, Laws of 1848 (2 R. S. [7th ed.], 928, 929), commissioners to lay a highway in the town of Kirkwood; beginning at the Binghamton highway and extending along, or near the south line of Tracy R. Morgan's farm to the boundary line between said towns in the center of said river, there to connect with a highway laid out, or to

be laid out, in the town of Conklin. March 19, 1886, said board of supervisors repealed said bill No. 35 by bill No. 38 (eighth finding), and thereafter, but on the same day, passed bill No. 39, authorizing said towns to construct said bridge at their joint expense, but not to cost more than $15,000. For the purpose of carrying said act into effect, the defendants were appointed commissioners for the town of Kirkwood, and three other persons were appointed commissioners for the town of Conklin and authorized to build said bridge; and the commissioners of each town were authorized to issue and raise money upon bonds for the purpose of paying the share of each town of the expense of building said bridge. Between March 18 and March 26, 1886, the commissioners appointed by bill No. 37 laid a highway in the town of Kirkwood as authorized by said bill, connecting with a highway then laid from the center of said river into the town of Conklin. (Eleventh finding) March 26, 1886, the defendants, as commissioners of Kirkwood and the commissioners of Conklin contracted with the King Iron Bridge and Manufacturing Company to erect an iron bridge upon said site before September 1, 1886, for $13,780. March 29, 1886, this action was begun to restrain defendants from issuing bonds or borrowing money on the credit of the town wherewith to build the bridge, and a temporary injunction was issued restraining the defendants from issuing bonds, or creating an obligation for that purpose; which remained in force until August 2, 1886, when it was vacated.

Chapter 419 Laws of 1886, passed May 19, 1886, assumes to, and by its language does validate and confirm the aforesaid bills numbers thirty-eight and thirty-nine, passed by said board of supervisors March 19, 1886; which bills are, by said act, declared to be legal and valid. At the time of the trial of this action (January 18, 1887), the bridge had been nearly completed, but whether bonds were issued by the defendants after the injunction was vacated and before the trial of the action, does not appear. The amended Constitution forbids the enacting of local bills laying out highways, or providing for the building of bridges, and commands that such cases shall be provided for by general laws. (Art. 3, § 18.) The Constitution also commands that: "The legislature shall, by general laws, confer upon the boards of supervisors of the several counties of the State such further powers of local legislation and administration as the

legislature may from time to time deem expedient." (Art. 3, § 23.) Pursuant to this provision, chapter 451, Laws 1885, and the acts amendatory thereof were passed. The plaintiff does not claim that the statute is unconstitutional, but that it does not confer power upon boards of supervisors to appoint commissioners for a town and compel it to unite with an adjoining town in building a new bridge, where none had previously existed, and issue bonds for the expense thereof, upon the application of the adjoining town.

The legislature may compel a town to open a new highway, construct the necessary bridges therefor and borrow the money on its bonds to pay the expense. (*People ex rel. McLean* v. *Flagg*, 46 N. Y., 401; *People* v. *Meach*, 14 Abb. N. S., 429.) Bill No. 39 is not invalid because at the date of its passage the highway, of which the bridge was to form a part, had not then been laid. (*People* v. *Flagg* and *People* v. *Meach, supra.*) It is elementary law, that when a legislative body has power to direct the performance of an act, it may, unless forbidden, select the agents by which the act shall be performed. The commissioners appointed to build the bridge and issue the bonds, are not officers of the town of Kirkwood, and within the second section of the tenth article of the Constitution, and it does not require that they be elected by the electors, or appointed by the authorities of the town. (*People ex rel. Kilmer* v. *McDonald*, 69 N. Y., 362.) The minor questions having been disposed of, there remains for consideration the principal question, and upon which the decision of this case turns : Whether subdivision 6, above quoted, authorizes boards of supervisors, upon the application of one town, to legally enact a law requiring a stream forming the boundary between two towns to be bridged at the joint expense of said towns, and that each town shall raise money to pay its share of the expense by an issue of bonds.

Chapter 314, Laws of 1838, as amended by chapter 164 of the Laws of 1848 (2 R. S. [7th ed.], 928, 929), authorizes boards of supervisors to require the construction of a highway extending into, or through adjoining towns. It is found (10th finding), and is undisputed, that the conditions existed which authorized the board of supervisors to pass the bill (No. 37), requiring the construction of the highway of which this bridge is a part, and that said bill was passed in the mode prescribed by the statutes. By this bill, Kirk-

wood was, "to be made liable to taxation for the erection, care, repair and maintenance * * * in part of any (this), bridge," and when the highway had been laid by the commissioners pursuant to said bill, Kirkwood was liable to taxation for the construction of said bridge, and thus was brought within the class of towns specified in the first paragraph of subdivision 6.

The clause of subdivision 6, limiting the powers of boards of supervisors to legislate in respect to this subject, read in 1875 : " But no authority shall be exercised under this subdivision, except upon the application of *the town or towns* liable to be taxed for such purpose to be made by" the electors or certain specified officers "of such *town or towns* respectively." In 1876 this clause was amended by striking out the words "the town or towns" (above italicised), and inserting in lieu thereof "a town," and by striking out the words "or towns respectively" (above italicised), so that the clause read : "But no authority shall be exercised under this subdivision except upon the application of *a town* liable to be taxed for such purpose to be made by" the electors or certain specified officers of *such town.* This clause was not changed by chapter 451, Laws of 1885, and it stands as enacted by chapter 257, Laws of 1876.

Before the amendment of 1876 boards of supervisors could not, under this subdivision, authorize or compel adjoining towns to unite in building and paying for a bridge over a stream separating the towns without an "application of the * * * towns (both towns) liable to be taxed for such purpose." The change made in 1876 was for some purpose, either to restrict or enlarge the powers of supervisors. It is evident that their powers are not restricted by the amendment, and we think the substitution of the phrase "except upon the application of a town liable to be taxed for such purpose" for the phrase "except upon the application of the town or towns liable to be taxed for such purpose," and striking from the end of the restriction clause the words "or towns, respectively," evince an intention to enlarge, and does enlarge the powers of the supervisors so they may authorize the construction of such a bridge and provide the means to pay the expense, upon the application of either of the interested towns.

It is urged that if upon the application of one town the board of

supervisors may authorize, it cannot compel the town not applying to unite in building and paying for a bridge; that the board may permit but cannot compel a town to act. When a body with legis-lative power has authority to authorize the performance of a public act or duty it may, unless restricted, compel the performance of the act or duty. (*Mayor* v. *Furze*, 3 Hill, 612; *People ex rel. Otsego Co. Bank* v. *Supervisors*, 51 N. Y., 401.) Many cases sustaining this proposition are cited in the opinion of Justice MARTIN (delivered when this case was before him on demurrer), which contains a satisfactory discussion of the two principal questions involved in this action.

The framers of the Constitution intended that the power thereto-fore residing in and frequently exercised by the legislature, to compel towns to construct and pay for necessary highways and bridges, should be delegated by the legislature to and exercised by boards of supervisors, which the legislature intended to do by pass-ing the statute under consideration. When a power, remedial in its nature, is conferred it is to be liberally construed, and all of the ordinary and appropriate means to execute it are to be deemed to be a part of the power itself. (Story's Const., §§ 429, 430.)

The judgment is affirmed, with costs.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.