### PEOPLE v. HOENIG.

(Supreme Court, Special Term, New York County.   February 23, 1904.)

1. LIQUOR TAX LAW—VIOLATION BY AGENT—SECOND PROSECUTION—INDICTMENT.
   Liquor Tax Law, § 34, subd. 3 (Laws 1896, p. 76, c. 112), provides that if there shall be two convictions of the clerks, agents, etc., of a holder of a liquor tax certificate, for violation of the act, the certificate shall be forfeited, and the principal deprived of all rights thereunder.  *Held*, that a second prosecution of an agent should be by indictment.

C. V. Hoenig was prosecuted for a violation of the liquor tax law. Motion for a direction that the charge be prosecuted by indictment. Granted.

BISCHOFF, J.   The fact that there has been one conviction of an agent or servant of the certificate holder heretofore involves the loss by the latter of his privileges under the certificate should this prosecution result in a conviction (Liquor Tax Law, § 34, subd. 3, Laws 1896, p. 76, c. 112).   Therefore the reasons which justify an application for a direction that the charge be prosecuted by indictment, in the case of the certificate holder personally, apply to such a case as this.
   Motion granted

---

### CITY OF NEW YORK v. INTERURBAN ST. RY. CO.

(Supreme Court, Appellate Term.   February 4, 1904.)

1. STREET RAILWAYS—RUNNING OF CARS—ORDINANCES.
   An ordinance providing that every car of a street surface railroad company shall bear a sign showing its destination, and that the company must carry thereon, without change of cars, a passenger to any regular stopping place desired by him on such car's route, is not satisfied by carrying a passenger on a car bearing the sign "Columbus Avenue" to the point at which it first reaches Columbus avenue;  such cars ordinarily running 30 blocks further on that avenue.

2. SAME—REGULATION BY CITY—STATE BOARD OF RAILROAD COMMISSIONERS.
   The railroad law (Laws 1890, p. 1082, c. 565), which, at most, confers on the board of railroad commissioners general supervision of all railroads, that they, in the interest of the public, may ascertain the physical conditions and details of operation for the purpose of recommending improvements, does not take from the city of New York the power to pass ordinances regulating the conduct of street railways therein.

3. SAME—REASONABLENESS OF ORDINANCE.
   The ordinance requiring street surface railroad companies to carry to any regular stopping place desired by him on such car's route, without change of cars except for transfer to a connecting line going in another direction, or in case an accident renders compliance with the ordinance impossible, is reasonable.

4. SAME—ACCIDENT TO CAR.
   In an action for a penalty for violation of an ordinance requiring passengers on a street surface railroad car to be carried to any place on the car's route, without change of cars, except for an accident rendering com-

pliance impossible, a statement of the conductor to the passengers when he switched the car off the route that the lights were not working is not evidence of such an accident.

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by the city of New York against the Interurban Street Railway Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and GREENBAUM, JJ.

George L. Rives (Arthur F. Cosby and George O'Reilly, of counsel), for appellant.

Henry A. Robinson (Arthur K. Wing, of counsel), for respondent.

GILDERSLEEVE, J. The questions which arise on this appeal relate to the validity and reasonableness of a city ordinance approved by the mayor July 22, 1902, which, in substance, requires street surface railroad companies to carry a passenger "to any regular stopping place desired by him upon such car's route" without change of cars, except for transfer to a connecting line going in another direction, or in case an accident renders compliance with the ordinance impossible. The action was brought to recover the penalty of $100 imposed by the ordinance for its violation. The learned trial judge dismissed the complaint; holding that the board of aldermen was not authorized to pass such an ordinance, and that the provisions of the general railroad act (Laws 1890, p. 1082, c. 565), governed and controlled such a regulation as is provided for in the said ordinance.

The facts disclosed on the trial were that in May, 1903, William F. Peters, J. Arch McGovern, and Alexander Saxe boarded a north-bound car of the defendant at or below 14th street, desiring to be carried, respectively, to 100th street, 98th street, and 104th street and Columbus avenue. The outside of the car in question bore a sign on which the words "Columbus Avenue" were printed. These three persons had a common experience. They were carried to Columbus avenue and 79th street, where they were told by the conductor to get out and take the car ahead. This they refused to do, and remained in the car which they had boarded downtown. This car was then switched onto the south-bound track, and taken, over the same route by which they came, to the South Ferry, where it remained 20 minutes, and was then moved to Columbus avenue and 59th street. There it was run into the car barn—these passengers still being in it—and kept there for at least 40 minutes, after which it was taken out and proceeded up Columbus avenue, carrying the passengers to their several destinations. Mr. Saxe paid two fares. The Columbus avenue line of cars runs ordinarily to 110th street. When the car was at 79th street the conductor said that the lights in it were not working. No evidence was offered by the defendant.

The ordinance in question declares (section 1) that:

"Every car * * * operated by street surface railroad companies in the streets * * * of the city of New York, shall carry throughout its route on the outside, in front and on top of each and every car, so operated, a sign

board or placard upon which shall appear, conspicuously, the destination of said car. Every such company must carry for a single fare upon such car, without change therefrom, each and every passenger to any regular stopping place desired by him upon said car's route in the direction of the destination so designated; and for every violation of the ordinance there shall be recoverable against the company so offending a penalty of $100.00 in an action to be brought in the name of the city of New York."

Section 2 provides that:

"This ordinance shall not apply to a transfer  *  *  *  nor where, by reason of any accident, compliance with the ordinance is rendered impossible."

The counsel for the defendant argues that there was no violation of the ordinance, because it only requires that the passenger be carried to the destination named on the sign upon the front of the car, which in this case was "Columbus Avenue"; that the words "Columbus Avenue" did not indicate any particular point on that avenue as the destination of the car taken by Mr. Peters and his fellow passengers; that that destination was not a particular part of the avenue to be specified by the passenger, but that the point at which the car first reached Columbus avenue was the destination designated in the ordinance, and therefore the passenger's destination. This argument is somewhat overwrought in refinement. If sound, it proves that "Columbus Avenue," on the car signs, means to, and not through, that avenue, and that, if the defendant arbitrarily chose to stop its cars at 59th street, where Columbus avenue begins, that is the destination which the ordinance contemplates, and the only one to which the defendant is bound to carry its passengers, though they desire to be carried to 110th street. Effect must be given to that part of the ordinance which requires the defendant to carry "every passenger to any regular stopping place desired by him upon such car's route." The desire of the passenger determines his destination, not the will of the railroad company. This is the only reasonable interpretation of the ordinance.

Upon our construction of the ordinance, the fact of its violation was abundantly established on the trial, and the only questions to be determined are, first, whether the board of aldermen possessed the power to pass the ordinance; and, second, whether, if it had that power, the ordinance is reasonable in its requirements.

The defendant's position is that the effect of the railroad law (Laws 1890, p. 1082, c. 565) was to vest in the State Board of Railroad Commissioners created by that law exclusive power and authority to regulate the operation of railroad cars throughout this state. Laws 1890, p. 1130, c. 565, § 161. That part of the railroad law which defines the duties and powers of the Board of Railroad Commissioners, in substance and effect, is that if, in the judgment of that board, after a personal examination, it should appear, in the case of any railroad in the state, that it needs repairs, additional rolling stock, addition to or change in station houses or additional terminal facilities, or that any change of rates of passenger fares or freight, or change in the mode of operating or conducting its business, is reasonable and expedient for promoting the security, convenience, and accommodation of the public, the board shall notify the same to the corporation, and give it an opportunity to be heard thereon, and if the corporation thereafter refuses or neglects

to make such repairs and changes within a reasonable time, and fails to satisfy the board that no action is required to be taken by it, the board shall fix the time within which the changes shall be made; that it shall be the duty of the corporation owning and operating the railroad to comply with such decisions and recommendations of the board as are just and reasonable. If it fails to do so, the board shall present the facts in the case to the Attorney General for his action, and report the same to the Legislature. To characterize this statement as a legislative delegation of power to this board to do anything whatever which requires the exercise of authority would be a perversion of language. At the most, it confers upon the Board of Railroad Commissioners general supervision of all railroads (section 157), that said commissioners, in the interest of the public, may ascertain the physical conditions and details of operation for the purpose of recommending improvements. This construction seems too obvious for serious argument or citation of authority. In two cases substantially this view of the act has been taken by the Court of Appeals. In the People, etc., v. Rome, etc., 103 N. Y. 95, 106, 8 N. E. 369, 372, which arose under the former railroad act (Laws 1882, p. 444, c. 353), largely the source of the present railroad law, the court says: "The decision of the Board of Railroad Commissioners has no binding or conclusive authority. * * * Its decision was merely advisory and recommendatory." In People, etc., v. N. Y., L. E., 104 N. Y. 58, 64, 9 N. E. 856, 859, 58 Am. Rep. 484, on the same subject, the court says, "Its proceedings and determinations, however characterized, amount to nothing more than an inquest for information." The court then proceeds to show how futile and how easily set at naught are all the efforts of the commissioners to effect any improvements in the management of the railroads placed under their supervision. Page 65, 104 N. Y., 9 N. E. 856, 58 Am. Rep. 484.

Did the Legislature intend by the enactment of the railroad law to take from the city of New York that degree of autonomy which it has enjoyed, in common with large municipalities throughout the country for years, and replace it by creating this board of commissioners, and putting it into office, without the semblance of the power necessary to make its services of any value to the public? I think not. Every consideration of justice and the public convenience, which by common consent enters into the subject of municipal government, demands for the city of New York the right of self-government, so far, at least, as regards the use and users of its vast system of public highways, to the end that the comfort and convenience of the public may be conserved and protected. This principle has been recognized and acted upon by the Legislature and the courts of this state for a long period of time, and under it a system of local laws has grown up, covering the whole field of municipal government. Assuredly, the Legislature never intended by the appointment of the board of commissioners to repudiate the principle of municipal self-government, upon which it has to this day almost invariably acted in dealing with the city of New York. The charter of 1897 vested the legislative power of the city in the common council and board of aldermen, continued in full force and effect all ordinances then in force, and gave them power to grant railroad

franchises, and pass all ordinances to carry those franchises into effect. It also declares in positive terms that the city shall not part with the rights and duties at all times to exercise, in the interests of the public, full municipal superintendence, regulation, and control in respect to all matters connected with grants of railroad franchises. Laws 1897, pp. 7, 15, 16, 21, 26, 27, c. 378, §§ 17, 41, 45, 50, 74, 75. And the same provisions are contained in the charter of the Greater New York (Laws 1901, pp. 8, 22–25, 38, 39, c. 466, §§ 17, 41, 44, 45, 74, 75). The attitude of the Legislature, as exhibited in the spirit of its past legislation concerning the city, and especially the provisions of the charter of the Greater New York, evinces no intention to abridge or restrict the power of self-government which it has enjoyed from an early day to the present time. We therefore conclude that the act of 1890, p. 1082, c. 565, did not have the effect to take from the city of New York the right to make the ordinance on which this action is based, and to enforce the penalty for disobeying it.

We entertain no doubt that the ordinance was reasonable in its requirements. Indeed, nothing could more completely vindicate the reasonableness and necessity than the circumstances which attended its violation in this case, as shown upon the trial. Besides the presumption is that the ordinance is reasonable, and it was for defendant to show that it was unreasonable. Mayor v. Dry Dock, 112 N. Y. 137, 19 N. E. 420; Mayor v. Dry Dock, 133 N. Y. 104, 30 N. E. 563, 28 Am. St. Rep. 609. This it did not do.

There was no proof on the trial of any accident which rendered compliance with the ordinance impossible. The remark of the conductor to the passengers about the lights not working in the car, brought out on the cross-examination of plaintiff's witness, was not evidence of such an accident. If the defendant claimed exemption from the penalty sued for, it should have brought itself within the proviso of the ordinance by proof of an accident such as is specified in the ordinance, but none was offered.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

FREEDMAN, P. J., concurs.

GREENBAUM, J. (concurring). One of respondent's contentions in support of the judgment seems to be that the board of aldermen of the city of New York had no power to enact the ordinance, for the alleged violation of which this action is brought, by reason of the limitations contained in the plaintiff's charter. The correctness of respondent's position must depend upon the construction of section 50 of the New York City charter (Laws 1901, p. 28, c. 466), which, so far as it is material to this discussion, contains the following provisions:

"Subject to the Constitution and laws of the state the board of aldermen shall have power to regulate the use of streets and sidewalks by foot  *  *  * passengers, animals and vehicles; to regulate the speed at which horses shall be driven or ridden and at which vehicles shall be propelled in the streets; *  *  *  to prevent encroachments upon and obstructions of the streets and to authorize and require their removal by the proper officers; and to make all

such regulations in reference to the running of stages, omnibuses, trucks and cars as may be necessary for the convenient use and accommodation of the streets, piers, wharfs or stations."

Respondent argues that the ordinance in question was obviously adopted to further the convenience of passengers riding upon the cars, and that it does not relate to the "convenient use or accommodation of the streets," which is the limitation placed upon the power of the board of aldermen by the section of the charter above quoted. The power conferred upon the municipality by the charter in controlling the use of the public streets is very broad and extensive. "Everything which tends to render the streets useful or convenient for the purposes of travelling upon them as common public highways is within the power of, and may be exercised by, the corporation." N. Y. & Harlem R. Co. v. Mayor, etc., 1 Hilt. 562, 585. The ordinance requires every street surface railroad company to carry, "without change therefrom, each and every passenger to any regular stopping place desired by him, upon such car's route, in the direction of the destination" designated "upon a sign board or placard which it is required shall conspicuously appear in front and on top of each car." It is evident that, in the absence of an ordinance of the general character above described, the surface cars might congest the traffic of the streets, and interfere with "the convenient use and accommodation of the streets," by depositing upon the streets passengers compelled to change cars as often as the railroad company officials would see fit so to do, with the result that crowds of passengers would be congregated at various points throughout the city's streets, to their peril from passing vehicles and the inconvenience of traffic upon the public highways. The reasonableness of the provisions of a statute or ordinance is not only generally presumed, in the absence of proof to the contrary, but in this case the reasonableness of the ordinance under discussion must be apparent to every one accustomed to traverse the busy highways of the city. It is obvious that there exist perils and dangers to life and limb on the part of those using the streets as pedestrians, which are increased by having a crowd of passengers come upon the street from a car which they are compelled to leave by the act of the officials of the road, who, for reasons of their own, force them to board a car ahead, or wait for a car behind. It is well settled that a construction which is "reasonable and in favor of the validity of a statute should be adopted, rather than the contrary." Curtin v. Barton, 139 N. Y. 505, 513, 34 N. E. 1093, 1095. "In the attempt to ascertain the intention of the Legislature, it is a just rule, always to be observed, that the court shall assume that every provision of the statute was intended to serve some useful purpose." Allen v. Stevens, 161 N. Y. 122, 145, 55 N. E. 568, 574. Even if it be assumed that the motive of those who enacted the ordinance in question was to promote "the convenience of passengers riding upon the cars," so that these passengers may not be put to the annoyance and inconvenience of being transferred from the car upon which they were accepted as passengers to some other car upon the same route, this would be no ground for declaring the ordinance a nullity, if power for the enactment of the ordinance can be found. "When power is conceded, we have no right to inquire into the motives or reasons for doing the par-

ticular act." People v. Flagg, 46 N. Y. 401, 405. An ordinance, which requires a surface railroad car to place a sign or placard showing its destination is well calculated to regulate the running of cars so as to prevent the congregating upon the streets of individuals who would be otherwise unexpectedly required to leave the car whenever the railroad officials decide not to permit the car to proceed further. It is not likely that an intending passenger would deliberately board a car which is not to reach his destination, when he might avoid the necessity of change by riding upon one which will carry him to his destination. The ordinance, read in its entirety, is clearly a regulation affecting the running of cars, and one which the municipality may deem necessary for the "convenient use and the accommodation of the streets," and therefore within the power expressly conferred by the charter.

I concur in the views expressed by Mr. Justice GILDERSLEEVE, and in his conclusions.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.