EDMUND WILSON, attorney-general of the State of New Jersey,

*v.*

STATE WATER SUPPLY COMMISSION et al

[Decided July 11th, 1913.]

*P. L. 1910 ch. 303,* creates the state water supply commission a body corporate and authorizes it to own property. *P. L. 1912 ch. 318,* authorizes it to acquire property for the purpose of appropriating or conserving the potable waters of the state and provides that it may deliver bonds payable at such time, and upon such terms, and bearing such interest, and with such provision for sinking fund, &c., as it may determine, and may secure their payment by a mortgage. Under this authority the commission contracted for the purchase of certain land, for

which it agreed to deliver fifty-year bonds of the par value of $1,000,000, secured by a mortgage on the property which should contain elaborate provisions for payment of the interest, for the conservation of the lands, sinking fund, and further indebtedness or liability secured on the property.—*Held,* that the execution of such contract, or the statutes authorizing it, did not violate constitution, article 4, section 6, paragraph 4, providing that the legislature shall not create any debt of the state which with previous debts shall at any time exceed $100,000, unless authorized for some single object or work, to be distinctly specified by law, which shall provide the ways of paying such indebtedness within thirty-five years, and that no such law shall take effect until it shall have been submitted to the people, since the commission is a corporate entity apart from the state, and the constitutional provision applies only to debts of the state and not to debts of public corporations for the payment of which the state is not liable.

On demurrer to information.

*Mr. Edmund Wilson,* attorney-general, for the informant.

*Mr. J. Edward Ashmead* and *Mr. Frederic J. Faulks,* for the demurrants.

WALKER, CHANCELLOR.

The information in this case avers that the state water supply commission was created by chapter 252 (*P. L. 1907*); that the commission by that act and those amendatory thereof and supplemental thereto is charged with a general supervision over all .the sources of potable and public water-supply to the end that the same may be developed for the use of the people of the state; that by chapter 318 (*P. L. 1912*), the commission was authorized to acquire lands, water rights and interests therein for the purpose of appropriating or conserving the potable waters of the state to the common use of the inhabitants thereof with authority to provide for payment for such lands, water rights and interests therein as might be acquired; that the commission by appropriate proceedings resolved upon the purchase of all the lands and premises owned by the estate of Joseph W. Wharton, deceased, situate in Burlington, Camden and Atlantic counties, which resolution was approved by his excellency, the

governor, and a formal contract entered into between the parties, assented to in writing by the governor in pursuance of the statute.

The consideration to be paid, or rather secured, for the conveyance of the Wharton tract, is $1,000,000, to be secured by duly-executed bonds of the commission of the par value of $1,-000,000, to consist of an issue of one thousand bonds of the denomination of $1,000 each, payable fifty years from date, with interest; the bonds, and the mortgage by which they are to be secured, to be a lien on the premises conveyed and to provide, among other things, that the commission, or its successors, will, from time to time, in order to pay the interest and for the conservation of the lands, use for such purpose in each year during which any of the bonds shall remain unpaid, at least the sum of $1,000 out of all other moneys and credits that may be unappropriated to other specific uses; that a sinking fund shall be provided into which there shall be paid, among other moneys, any and all moneys which from time to time may be appropriated by any legislature toward the principal of the bonds; and, for a period of five years from date of the bonds and mortgage, an additional sinking fund of one per cent. of $1,000,000 shall be annually set aside for the payment of the bonds and mortgage at maturity, and that this sinking fund shall be created in part from any appropriation made by the legislature and in part from any moneys and credits the commission may have unappropriated to other specific uses. The usufruct of the premises is also to be pledged.

The informant charges that the commission in negotiating the purchase of the lands acted as agent of the state, and that if it acquires title according to the terms of the contract, the title so acquired will be that of the state, and that in consummating the purchase and in the execution and delivery of the bonds and mortgage and in the method and means provided for payment, and in fixing the time of the maturity of the bonds, the commission has been acting, and will act, without authority in law and in violation of article 4, section 6, paragraph 4 of the constitution of this state, which reads as follows:

"The legislature shall not, in any manner, create any debt or debts, liability or liabilities, of the state which shall, singly or in the aggregate with any previous debts or liabilities, at any time exceed one hundred thousand dollars, except for purposes of war, or to repel invasion, or to suppress insurrection, unless the same shall be authorized by a law for some single object or work, to be distinctly specified therein; which law shall provide the ways and means, exclusive of loans, to pay the interest of such debt or liability as it falls due, and also to pay and discharge the principal of such debt or liability within thirty-five years from the time of the contracting thereof, and shall be irrepealable until such debt or liability, and the interest thereon, are fully paid and discharged; and no such law shall take effect until it shall, at a general election, have been submitted to the people, and have received the sanction of a majority of all the votes cast for and against it at such election."

The information prays an injunction restraining the commission from executing the proposed contract, &c., and for other and further relief. The parties of the second part to the agreement and proposed contract, namely, the owners of the Wharton tract, have demurred, assigning certain causes, all of which amount to an assertion that the commission has acted within its powers, and has not, nor does it propose, by the acts complained of, to violate the constitution. This brings us at once to the law of the case.

The question is, is the contract under review a contract of the state itself and an attempt to do by indirection what cannot be directly done, or, is the commission an independent entity having executive and administrative powers, and is it obligating itself alone and not fastening any debt or liability upon the state, its creator? It ought to be stated that by chapter 303 (*P. L. 1910*) the commission was created a body corporate and invested with the ownership of property, &c. It ought also to be stated that the contract provides that the bonds and mortgage proposed to be made shall contain an express provision to the effect that no present or future indebtedness or liability of the State of New Jersey shall in any manner or for any purpose be created or constituted thereby, and that the principal and interest on the bonds and mortgage must be paid and satisfied from the property, rights and moneys mentioned, including all moneys arising from the sale of the property and rights, or any portion thereof, and not otherwise, unless a special appropriation be made by the legislature therefor, and that in developing

or paying recourse must be had solely to the property, rights and moneys mentioned and not from any other source or sources.

If there were no decisions directly affecting the question, I would, I think, incline to the view that the commission with respect to the contract mentioned would, in effect, though not in form, make, or attempt to make, a contract for and binding upon the state, and would, therefore, be within the constitutional inhibition; but, upon careful consideration of this matter, I am convinced that the doctrine enunciated by the supreme court in *Van Cleve* v. *Passaic Valley Sewerage Commissioners, 71 N. J. Law (42 Vr.) 183*, settles the question in favor of the demurrants.

In that case (*Van Cleve* v. *Passaic Valley Sewerage Commissioners*) there was brought under review two resolutions passed by the commissioners, one estimating the cost and expense of the whole work to be undertaken and constructed by them, under statutory authority, at the sum of $9,000,000, and another by which they had determined upon an issue of $1,000,000 in order to provide for the payment of the cost and expense to be incurred in the purchase of land and construction of certain of the works in question. The act, under which the commissioners were operating, provided that for the payment of costs and expenses incurred or to be incurred for the purchase of lands and other property and the construction of its works, they should have power from time to time to issue corporate bonds in an amount not exceeding $9,000,000, and not exceeding the estimated cost and expense of the whole works, the bonds to run not exceeding fifty years from date, bearing interest not exceeding four per centum per annum, with provisions for sinking fund, &c. Regarding the powers of the corporation the supreme court (at *p. 196*) said:

"The powers conferred upon the sewerage commissioners are executive and administrative in their character. The commissioners are constituted by section 3 a body politic, with the essential powers of corporations, and by section 21 they are authorized to make rules and regulations for the use, protection and management of the works, property and plant, and for the

protection of the rivers and streams within the district from pollution."

Among the other objections invoked by the prosecutors in the *Van Cleve Case* was one challenging the right of the commissioners to incur an obligation in excess of $100,000; and article 4, section 6, paragraph 4 of the constitution, was pointed out as the barrier. Said the supreme court, speaking to that subject— *71 N. J. Law (42 Vr.)*—at *p. 228:*

"Next, the prosecutors invoked article 4, section 6, paragraph 4 of the constitution, declaring that the legislature shall not, in any manner, create any debt or liability of the state exceeding $100,000, without the previous approval of the people at a general election. But this prohibition has no applicancy to local or municipal indebtedness. *People* v. *Flagg, 46 N. Y. 401, 406; Cass* v. *Dillon, 2 Ohio St. 607, 613; Clark* v. *City of Janesville, 10 Wis. 136; Bushnell* v. *Beliot, 10 Wis. 195, 221; Pattison* v. *Board of Supervisors, 13 Cal. 175, 182; Cooley Const. Lim. (7th ed.) 321, 325.* A contrary view would overthrow practically all our municipal bond issues, for they depend ultimately on legislative authorization."

Now, the court's observation that the constitutional prohibition referred to has no application to local or municipal indebtedness, means, as I interpret it, that it has no application to any indebtedness which is not that of the state itself, and, applying the doctrine thus enunciated to the case at bar, I am constrained to hold that the legislature in authorizing the state water supply commission to purchase lands, water rights and interests therein, did not in any manner create any debt or debts, liability or liabilities, of the state, or authorize the commission to create any such; nor has the commission, in point of fact, done, or attempted to do, any such thing.

It ought to be observed that the cases cited by Mr. Justice Pitney, speaking for the supreme court, in the *Van Cleve Case,* amply bear out his assertion that the constitutional provision referred to has no application to local or municipal indebtedness.

The constitutional prohibitions in the cases cited are not in a general way unlike that in our own constitution, which is the

subject of the present examination. On the contrary, in effect, they are, I may say, entirely like ours.

In *People* v. *Flagg, 46 N. Y. 401, 406* (one of the cases cited in the *Van Cleve Case*), it is said:

"It is evident that the prohibited debts are state debts—that is, debts against the state as such, and not town, county or city debts."

In *State* v. *Madison, 7 Wis. 688,* reviewing a similar constitutional prohibition, the court said (at *p. 691*):

"The language of the provision is plain, and evidently refers to a debt on behalf of the state, and contracted in its political capacity as such; and cannot, without great violence, be held to apply to the debts of city and municipal corporations."

The reason that the courts in these cases refer to municipal as distinguished from state debts, of course, is because they were treating of the former kind of debts. It is clearly apparent that the principle enunciated applies with equal force to a debt created by a public corporation, other than municipal, when the debt or obligation is made that of the corporate entity alone, and in no way or manner that of the state.

In *Clark* v. *City of Janesville, 10 Wis. 136,* the remarks of the court (at *p. 172*) are pertinent. It was there said:

"If this, then, is so; if the credit of a city is not the credit of a state, nor its debt a state debt, such acts are not liable to the objection of doing indirectly what cannot be done directly. The thing that cannot be done directly, is to contract a state debt for works of internal improvement. If the legislature should attempt to authorize a city to contract a state debt for such works, that would be attempting to do indirectly what it could not do directly, as well as being a very great absurdity. But when it only allows it to contract a debt against itself, that is liable to neither objection. Nor is it liable to the logical objection of deriving power from a source where it does not exist. The state may have power to grant a power, and at the same time not have power to execute it. This is clearly shown by reference to this very prohibition against its being a party in carrying on internal improvements. No one doubts that it may authorize a railroad company to build a railroad. But it could not build one itself.

And is that deriving power from a source where it does not exist? Clearly not. Because the state has the power to grant the authority, and is prohibited only from being itself a party to its execution. The difficulty with this objection is, that it confounds the power of granting a right, with the power of being a party to its exercise; whereas the two are essentially distinct. This is illustrated by reference to the king's prerogative of granting offices. See *Bac. Abr., tit. 'Prerogative E,'* where it is said: 'The king cannot execute any office relating to the administration of justice, although all such officers derive their authority from the crown, and although he hath such offices in him to grant to others.' "

Turning again to the constitutional prohibition invoked by the informant, we find that the provision is that the legislature shall not in any manner create any debt or liability of the state beyond a certain amount, &c. Turning to the act of the legislature under which the commission has proceeded in this case, we find (*P. L. 1912 ch. 318 § 2*) that the commission in acquiring property and rights shall have power to assume the payment of the principal and interest of any outstanding bonds or mortgages upon or affecting any or all of such property and rights, &c. It appears, therefore, that the legislature has studiously avoided doing the thing which is inhibited, and that by no process of reasoning can it be said that it has in any way or manner fastened any debt or liability upon the state in its capacity of sovereign in violation of organic law.

Upon this whole matter I am clearly of opinion that the state water supply commission is a corporate entity, apart from the state, created by the state in the exercise of lawful authority; that there has been devolved upon the commission power to make the contract, which is the subject of this inquiry, pledging the property to be acquired and other property of the commission for the payment of the purchase price, without any authority to obligate the state therefor; that the commission in executing the contract has not bound, or attempted to bind, the state, but, on the contrary, has made ample provision for the protection of the state itself against any debt or liability in respect to the property acquired; that the state, as such, is in

no way or manner obligated or indebted in the premises, nor can it be; and that, therefore, the transaction does not fall within the constitutional prohibition.

The demurrer must be sustained.